WILLOW R. HILLMAN    OSB #153514
E-mail: willow@willowhillmanlaw.com
LAW OFFICE OF WILLOW HILLMAN, LLC
44 Broadway, Suite 222
Eugene, OR 97401
Phone :        (541) 735-3678
Fax:           (541) 485-7152

Of Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

ANZHELIKA PAYNE, personal
representative to the estate of LANDON
JAY PAYNE                                      Civil No.
        Plaintiff.                                              COMPLAINT
                                                        (Civil Rights/State Law/Damages)
vs.

JAIRO SOLORIO, an individual,                  DEMAND FOR JURY TRIAL
ANDREW ROBERTS, an individual,
JACOB THOMAS, an individual,
ROBERT GRIESEL, an individual,
JUSTIN WILSON, an individual,
KIMBERLY FULTON, an individual,
EMMA EDWARDS, an individual,
COLTER GAWITH, an individual,
NATHAN GENT, an individual,
MICHAEL BAEUERLEN, an individual,
STEPHEN FOLEY, an individual,
JOSEPH FISHER, an individual,
JEREMY FIFER, an individual,
WILLIAM MCCLURE, an individual,
LANCE JESTER, an individual,
CLINT RILEY, an individual, C. SANTINI, an individual,
LANE COUNTY and CITY OF EUGENE, a municipal
corporation.

        Defendants.

1    COMPLAINT

**INTRODUCTION**

1.   On March 27, 2020, Anzhelika Payne called 911 requesting help for her husband who was experiencing a mental health crisis.  Eugene Police officers arrived knowing Mr. Payne had a history of mental health emergencies and that he had a warrant out of another county for contempt of court (nonpayment of child support).  Officers spent 30 minutes in conversation with Landon Payne attempting to calm his paranoia and speaking to his family trying to determine a safe place he could go for the night.

Due to the COVID 19 pandemic many of the local options were closed for people experiencing mental health crisis.  After 20 minutes of conversations officers on scene finally did what Anzelhika Payne had requested when she originally called 911 and requested CAHOOTS services for counseling.

Unfortunately, by the time CAHOOTS arrived Officer Solorio had decided he had had enough of the situation and as CAHOOTS talked calmly with Landon Payne, Officer Solorio decided he was going to go ahead use his discretion and confirm the warrant that was outstanding for child support.  This was a discretionary decision by the officer based on the nature of the warrant and the situation.  Not having any other reason to arrest Mr. Payne and having nowhere safe to take him, other than a hospital, which for some reason was never considered, Solorio decided to end the situation with an arrest.  Officer Solorio told his fellow officer that he did not want to come back out there later in the night or make another officer deal with it so he was going to arrest Mr. Payne now on the warrant.

Without informing Mr. Payne of his warrant or his decision to arrest him, multiple officers moved in quickly on the paranoid man and grabbed him.  Mr. Payne shocked at the situation and trying to understand tried to pull away.  Officer Thomas pulled his taser and ultimately tazes Mr. Payne 4-5 times at very close range in a matter of seconds.

2    COMPLAINT

Mr. Payne in an even more severe mental health crisis is hand cuffed and placed in a police cruiser where he unintelligibly moans, groans and grunts. Medics arrived and were not able to get vital signs so, the officers decide to skip the medical evaluation and take Mr. Payne to the Lane County Jail to be booked in.

At the Lane County Jail, Mr. Payne continues to moan, grunt, and gasp as deputies remove him from the Eugene Police Department SUV. Mr. Payne is taken to the ground by multiple deputies and kneeled on by as many as eight deputies. During this encounter, Mr. Payne becomes unconscious. When deputies realize what has occurred, they begin CPR. Ultimately, because of this encounter Mr. Payne was placed on life support for a day and ultimately succumbed to his injuries on March 30, 2020.

## NATURE OF ACTION

2.    Pursuant to 42 USC §198, Plaintiff alleges the deprivation of Landon Jay Payne's rights as protected by the state and federal constitutions and statutes. Plaintiff is also alleging violations of Oregon common law in the form of intentional infliction of emotional distress. Anzhelika Payne, wife of the late Landon Payne, is the duly appointed personal representative of the estate of Landon Payne. Plaintiff seeks economic, non-economic and punitive damages and equitable remedies, including attorney fees and litigation expenses/costs, which further includes expert witness fees and expenses in an amount to be determined by a jury trial.

## JURISDICTION & VENUE

3.    This court has jurisdiction over plaintiff's federal claims by virtue of 28 USC §§1331 and 1343, and over plaintiff's state claims by virtue of 28 USC §1367.

4.    Venue is in the District of Oregon pursuant to 28 USC §1391(b) because the claims arose in this judicial district.

*LAW OFFICE OF WILLOW HILLMAN*
*44 BROADWAY, SUITE 222 – EUGENE, OR 97401*
*Phone: (541) 735-3678    Fax: (541) 485-7152*

**TORT CLAIM NOTICE**

5.      Plaintiff learned of the of this claim in July of 2021 when an article was published about the death of her husband prior to that time she had been misled by officials regarding the nature of his death.  She has filed this lawsuit within one year of learning of the claims and has thereby satisfied the requirements of the Oregon Tort Claims Act, as specified in ORS 30.275.

**PARTIES**

6.      Landon Jay Payne died intestate.  Landon Payne was a resident of Eugene, Oregon, Lane County at the time of the events alleged herein.  Anzhelika Payne, wife of the late Landon Payne, is the duly appointed personal representative of the estate of Landon Jay Payne. Anzhelika Payne was a resident of Eugene, Oregon, Lane County at the time of the events alleged herein.

7.      At all material times herein, defendant CITY OF EUGENE ("Eugene") is a public body in the State of Oregon responsible under state law for the acts and omissions of its law enforcement officers and other employees, including those whose conduct is at issue herein. As a local government entity, the City of Eugene is a person under 42 USC §1983.  At all material times the city of Eugene employed Defendants JAIRO SOLORIO, ANDREW ROBERTS, JACOB THOMAS and ROBERT GRIESEL.

8.      At all material times these defendants were working under the color of State Law.

9.      At all material times herein, defendant JAIRO SOLORIO was a CITY OF EUGENE police officer acting within the course and scope of his employment.  Jairo Solorio is sued in his individual capacity only. On information and belief, he is a citizen and resident of the State of Oregon.

10.     At all material times herein, defendant ANDREW ROBERTS was a CITY OF EUGENE police officer acting within the course and scope of his employment.  Andrew Roberts

4    COMPLAINT

is sued in his individual capacity only.  On information and belief, he is a citizen and resident of the State of Oregon.

11.    At all material times herein, defendant JACOB THOMAS was a CITY OF EUGENE police officer acting within the course and scope of his employment.  Jacob Thomas is sued in his individual capacity only.   On information and belief, he is a citizen and resident of the State of Oregon.

12.    At all material times herein, defendant ROBERT GRIESEL, was a CITY OF EUGENE police officer acting within the course and scope of his employment.  ROBERT GRIESEL is sued in his individual capacity only.  On information and belief, he is a citizen and resident of the State of Oregon.

13.    At all material times herein, defendant LANE COUNTY is a public body in the State of Oregon responsible under state law for the acts and omissions of its law enforcement officers/corrections staff and other employees, including those whose conduct is at issue herein. As a local government entity, Lane County, is a person under 42 USC §1983.  At all material times Lane County employed Defendants Deputies, Justin Wilson, Kimberly Fulton, Emma Edwards, Colter Gawith, Nathan Gent, Michael Baeuerlen, Stephen Foley, Joseph Fisher, Jeremy Fifer, William McClure, Lance Jester, Clint Riley and Deputy C. Santini.

14.    At all material times these defendants were working under the color of State Law.

15.    Clint Riley is the Jail Commander for the Lane County Sheriff's Office.  At all times pertinent, Captain Riley was acting as an agent of Lane County, actual or implied, acting within the course and scope of his agency.  Captain Riley oversaw the day-to-day operations of the jail and was responsible for ensuring that people entering the Lane  County  Jail  in March  2020 were  receiving  constitutionally  adequate medical services and evaluations, that proper COVID 19 protocols were in place, that only proper and necessary force is used on detainees, and that the

5    COMPLAINT

correctional deputies followed them.  On information and belief, he is a citizen and resident of the State of Oregon.

16.    At all material times herein, defendant JUSTIN WILSON was a LANE COUNTY Sheriff's Deputy acting within the course and scope of his employment at the Lane County Jail.  Justin Wilson is sued in his individual capacity only. On information and belief, he is a citizen and resident of the State of Oregon.

17.    At all material times herein, defendant KIMBERLY FULTON was a LANE COUNTY Sheriff's Deputy acting within the course and scope of her employment at the Lane County Jail.  Kimberly Fulton is sued in her individual capacity only. On information and belief, she is a citizen and resident of the State of Oregon.

18.    At all material times herein, defendant COLTER GAWITH was a LANE COUNTY Sheriff's Deputy acting within the course and scope of his employment at the Lane County Jail.  Colter Gawith is sued in his individual capacity only. On information and belief, he is a citizen and resident of the State of Oregon.

19.    At all material times herein, defendant NATHAN GENT was a LANE COUNTY Sherriff's Deputy acting within the course and scope of his employment at the Lane County Jail. Nathan Gent is sued in his individual capacity only. On information and belief, he is a citizen and resident of the State of Oregon.

20.    At all material times herein, defendant STEPHEN FOLEY was a LANE COUNTY Sheriff's Deputy acting within the course and scope of his employment at the Lane County Jail.  Stephen Foley is sued in his individual capacity only. On information and belief, he is a citizen and resident of the State of Oregon.

21.    At all material times herein, defendant MICHAEL BAEUERLEN was a LANE COUNTY Sheriff's Deputy acting within the course and scope of his employment at the Lane County Jail.  Michael Baeuerlen is sued in his individual capacity only. On information and belief, he is a citizen and resident of the State of Oregon.

6    COMPLAINT

22.     At all material times herein, defendant EMMA EDWARDS was a LANE COUNTY Sherriff's Deputy acting within the course and scope of her employment at the Lane County Jail.  Emma Edwards is sued in her individual capacity only. On information and belief, she is a citizen and resident of the State of Oregon.

23.     At all material times herein, defendant JOSEPH FISHER was a LANE COUNTY Sherriff's Deputy acting within the course and scope of his employment at the Lane County Jail. JOSEPH FISHER is sued in his individual capacity only. On information and belief, he is a citizen and resident of the State of Oregon.

24.     At all material times herein, defendant JEREMY FIFER was a LANE COUNTY Sherriff's Deputy acting within the course and scope of his employment at the Lane County Jail. Jeremy Fifer is sued in his individual capacity only. On information and belief, he is a citizen and resident of the State of Oregon.

25.     At all material times herein, defendant WILLIAM MCCLURE was a LANE COUNTY Sherriff's Deputy acting within the course and scope of his employment at the Lane County Jail.  William McClure is sued in his individual capacity only. On information and belief, he is a citizen and resident of the State of Oregon.

26.     At all material times herein, defendant LANCE JESTER was a LANE COUNTY Sherriff's Deputy acting within the course and scope of his employment at the Lane County Jail. Lance Jester is sued in his individual capacity only. On information and belief, he is a citizen and resident of the State of Oregon.

27.     At all material times herein, defendant DEPUTY C. SANTINI was a LANE COUNTY Sherriff's Deputy acting within the course and scope of his employment at the Lane County Jail.  C. Santini is sued in his individual capacity only. On information and belief, he is a citizen and resident of the State of Oregon.

*LAW OFFICE OF WILLOW HILLMAN*
*44 BROADWAY, SUITE 222 – EUGENE, OR 97401*
*Phone: (541) 735-3678    Fax: (541) 485-7152*

## FACTUAL ALLEGATIONS

### The Arrest

28.     On March 27, 2020, Eugene Police Officers Jairo Solorio, Andrew Roberts and Jacob Thomas were dispatched to a call of a man in a mental health crisis.

29.     Eugene Police Department policy requires its officers to take a 40-hour crisis intervention team training known as CIT to prepare them for deescalating and dealing with individuals in crisis.

30.     According to EPD Policies, "Officers are expected to use their CIT training when responding to incidents involving persons in crisis due to known or perceived mental illness."

31.     Upon information and belief and, according to State DPSST records, none of the three officers had completed the mandatory training when they arrived to assist Mr. and Mrs. Payne.

32.     Anhelika Payne had called 911 asking for CAHOOTS to respond to her home to assist her husband who was experiencing a mental health crisis and she believed may have used some substance.

33.     The officers knew before arriving to the Paynes' home that Landon Payne had a history of mental health issues as the Eugene police department had previously taken Mr. Payne for a mental health hold in 2017.

34.     Officers arrived to find Mr. and Mrs. Payne outside on the porch of their home. Officer Solorio approached the couple first and asked them how it was going.  Mrs. Payne responded, "it could be better," and told the officer her "husband {was} having some trouble".

35.     Mr. Payne focused immediately on the fact that the officers arrived with no lights on and had no lights on. He asked the officer multiple times about his lights.

36.     The officer asked Mr. Payne if he would come off the porch and speak with him

8    COMPLAINT

,and Mr. Payne requested multiple times in a calm but, paranoid manner that the officer turn his lights on. Payne asked the officer for his badge number and asked him to show him his badge to confirm the number he gave appeared on his badge.

37.  Officer Solorio assured Mr. Payne he would not lie to him and asked multiple times what he could do to help. Most times however, he did not wait for a response or cut Mr. Payne off when he attempted to respond.

38.  Landon Payne ultimately informed the officer that his household is threatening to have him killed. He said, "I am not trying to bad mouth them but, this what took place". Clearly displaying continued paranoid delusions, Mr. Payne continued expressing his fear of the situation he was in.

39.  Officer Solorio responded by calling Anzhelika Payne off the porch where she stood attempting to comfort her husband, with the guise of wanting to talk to her.

40.  When Mrs. Payne stepped down Officer Solorio instead, ushered her over to other officers. He then moved in closer to Mr. Payne asking repeatedly "How can I help you brother?"

41.  Throughout this conversation Mr. Payne remained clearly paranoid and concerned but, displayed a relatively calm demeanor, answering questions and carrying on a conversation.

42.  Officer Solorio asked Mr. Payne repeatedly why he was freaking out to which Mr. Payne responded that he did not want to die and told the officer if he remained at the home he would be killed.

43.  Mr. Payne asked Officer Solorio why he was lurking in the corner and continued to display concerned and paranoid concerns.

44.  According to Eugene Police Department Policies, mental health crisis includes people exhibiting signs of delusions, extreme fright, and "strong unrelenting fear of persons,

9    COMPLAINT

places or things."

45.    Mr. Payne explained that he wanted to pack a bag and be brought to White Bird Clinic.  Throughout the conversation, Mr. Payne had arms by his side and his hands in his pockets.

46.    Mr. Payne requested multiple times to go to White Bird Clinic.

47.    Mrs. Payne told officers that Mr. Payne made no threats to anyone, and that he had never been violent.  She reiterated several times that Mr. Payne was fearful.

48.    Officers told Mrs. Payne multiple times they have no basis to arrest Mr. Payne or, detain him because he had not committed a crime and was not a danger to himself or others.

49.    This was the first of many falsities relayed to Mrs. Payne.

50.    Nearly 20 minutes into their contact, officers finally do what Mrs. Payne had originally requested in her 911 call and call CAHOOTS to come provide counseling services.

51.    Mr. Payne continued to calm down even further while he waited for Cahoots.

52.    CAHOOTS finally arrived and while the crisis intervention team spoke with Mr. Payne, Officer Solorio has a conversation with his fellow officer who reminded him that they learned on the way to the call that Landon Payne had an unconfirmed warrant.

53.    Officer Solorio told the other officer he didn't know what he is going to do about that.  It appeared that Officer Solorio thinks about it for a minute and then said, " uh I don't know I am probably going to confirm it."  The other officer added, "Because you think we will be back?" Officer Solorio saed, "I think so, and I don't want to leave it to someone else because I am going to be at the hospital."

54.    Thirty minutes and 38 seconds into the conversation, without explaining what they were doing, informing Mr. Payne he was being arrested or, that he had warrant for child support.  Two officers rushed Mr. Payne and attempted to grab his arms.

55.    This was a discretionary arrest.

56.    According to Eugene Police Department Policy officers could, if they believed

10    COMPLAINT

Mr. Payne was a danger to himself or others, place him on mental health hold.

57.    This was known to officers as they had done this a few years prior with Mr. Payne when he experienced a similar mental health crisis.

58.    The officers were not required to arrest Mr. Payne simply because, he had an outstanding warrant.

59.    Eugene Police Department Policy "encourages officers to use sound discretion in the enforcement of the law".

60.    The warrant was from another county for contempt of court for non-payment of child support.

61.    Eugene Police Department Policy would have allowed in the officer's discretion to cite Mr. Payne for his warrant, or delay arresting him until such time it would not risk the safety of Mr. Payne, the public and/or the officers.

62.    Officers did not inquire with Marion County Jail whether they even wanted Mr. Payne arrested or held on the warrant out of their county.

63.    During the COVID 19 pandemic additional guidance, practices and policies around arrests were in place to protect the officers, the public and the jail population.

64.    Local Mental Health Crises Centers were closed because of the pandemic.

65.    Lane County jail was trying to limit the inmate population and number of new inmates as much as possible.

66.    Officer Solorio decided to arrest Mr. Payne and informed his fellow officers of his intent to do so over the radio.  They all immediately moved in on Mr. Payne.

67.    Mr. Payne, seemingly not understanding what was happening, questioned officers and pulled his arm away as they grabbed him.

68.    Within second Office Thomas tazed Mr. Payne, with no audible warning.

69.    The officers pulled Mr. Payne to the ground.

*LAW OFFICE OF WILLOW HILLMAN*
*44 BROADWAY, SUITE 222 – EUGENE, OR 97401*
*Phone: (541) 735-3678    Fax: (541) 485-7152*

70.     Officers can be heard telling Mr. Payne not to resist.

71.     Mr. Payne can be heard saying he is not resisting, asking for help and telling them that he cannot breath.

72.     At one point officers recognize he is unable to breath as one of them directs the others to roll him on his side to give him a chance to breath.

73.     At another point Mr. Payne becomes tangled in the tazer wires.

74.     Throughout the encounter Officer Thomas tazed Mr. Payne multiple times from a very close range.

75.     At least one of the times Mr. Payne was tazed he appears to be compliant and already restrained.

76.     Officers moved Mr. Payne to a police cruiser.  During the short walk and after only a few steps, Landon Payne begs the officer to stop walking him so he can breath.  At one point, Landon Payne begins to collapse and the officer directs him to stand up.

77.     Mr. Payne was pale, sweating profusely and making unintelligible, yells, screams, groans and gasps.

78.     Officers called for EMTs to come to evaluate Mr. Payne to medically clear him for transport to the jail.

79.     Sergeant Griesel arrived to investigate Officer Thomas' use of force.

80.     Sergeant Griesel was aware of Mr. Payne's mental health history as he had been involved the previous encounter with Mr. Payne and joked on this occasion about tazing him in the previous encounter.

81.     Upon information and belief, Eugene Police Department Policy requires that arrestees be medically cleared after they have been tazed prior to transport to the jail.

82.     Mr. Payne begged for water as he waited for the medics.

83.     A CAHOOTS employee questioned the officers about having whether they called medics to come out to sedate Mr. Payne or to just check him out.

12      COMPLAINT

84.    In response Sergeant Griesel, stated "I want to check on him he's kind of…"

85.    Another officer continually offered Mr. Payne water while they all waited for the medics.

86.    Everyone appeared to recognize there was reason to be concerned for Mr. Payne's health.

.    87.    Medics arrived but, were unable to obtain vitals from Mr. Payne.

88.    The EPD officers all wrote in their reports that Mr. Payne was medically cleared however, vitals were never obtained by medics.

89.    Multiple people including Mrs. Payne and the Cahoots employees all questioned whether officers were going to have Mr. Payne properly medically evaluated before transporting him to the jail.

90.    A proper evaluation never occurred.

91.    Officer Solorio told Sergeant Griesel he was not intending to charge Landon Payne with Resisting Arrest.  Sergeant Griesel responded that he should charge Mr. Payne because of the use of force by Officer Thomas in using his tazer.

92.    Officer Solorio transported Mr. Payne to the Lane County Jail.  Mr. Payne can be heard grunting, repeating no and gasping throughout the ride.  Mr. Payne was seated in the cruiser and did not seem to be combative, thrashing, kicking or moving much.

93.    During the transport Officer Solorio mad a phone call in nature telling someone he was going to be late and unavailable for a bit as he was headed to the jail.

**Arriving to the Jail**

94.    Officer Solorio arrived at the Lane County jail at 11:01 p.m. with Landon Payne in the back still grunting and gasping.

95.    This was the first night policies at the jail had changed regarding screening at the jail related to the COVID 19 pandemic.

13    COMPLAINT

96.     Despite Mr. Payne's demeanor during the drive, Officer Solorio had informed the jail prior to his arrival he was bringing in a "combative subject".

97.     Officer Solorio exited his vehicle and told the deputies that a tazer was deployed, and Mr. Payne was being brought in on resisting arrest and a warrant.  He did not inform them of Mr. Payne's mental health crisis past or present or, that he had not received a medical evaluation or clearance yet.

98.     Deputy Baulerlen leaned into the vehicle and attempted to ask Mr. Payne some questions, to which Mr. Payne continued to grunt and the deputy informed the others that Payne was not even acknowledging him.

99.     Deputy Lance Jester then informed Officer Solorio that Marion County did not want Mr. Payne held on their warrant.

100.    Officer Solorio still insisted that Mr. Payne be booked into the jail on the resisting arrest charge because, if not he would just have to deal with him again.

101.    "Sorry to do this to you guys" Solorio said, "at the end of the day, we're going to get a call back, and we're going to have to do kind of the same thing again".

102.    Officer Solorio never acknowledged, he could have chosen the hospital instead of the jail or chosen not to cite Mr. Payne instead of arresting him at all.

103.    The deputy agreed the jail would take Mr. Payne but, informed Officer Solorio he may be released from the jail anyway and end up back out.

104.    Ignoring the fact that even department policy gave him other options, Officer Solorio told the deputy "we didn't have another option, either."

105.    One deputy pointed a taser at Mr. Payne as multiple other deputies removed Mr. Payne from the vehicle.

106.    As many as seven or eight deputies were involved in removing Mr. Payne who was not actively resisting.  Mr. Payne did continue his unintelligible grunting and moaning and at times yelling.

14      COMPLAINT

107.    The deputies placed Mr. Payne on the ground and shackled his legs.  His arms were already restrained.

108.    Deputies placed Mr. Payne face down on the ground.

109.    Multiple deputies placed weight and kneeled on Mr. Payne who was still not resisting.  One Deputy kneeled on Mr. Payne's upper back.

110.    Mr. Payne grunted and tried to lift his head, which was pushed back down by a deputy into the concrete.

111.    Mr. Payne informed the deputies kneeling on him, "**I cannot breath**".  Those would be the last words ever spoken by Landon Jay Payne.

112.    Two minutes after deputies had placed Mr. Payne face down in the concrete and knelled upon him, the realized he had become unconscious.

113.    Deputies rolled him on his side and discovered his face and lips were blue and began CPR.

114.    EMTs were called and arrived minutes later.  EMTs took over CPR and continued until they arrived at Riverbend hospital.

115.    A little over an hour and half after officers had left her home with her husband in hand cuffs, Mrs. Payne received a call that her husband "collapsed at book-in, was given CPR and was now in the ICU at Riverbend hospital."

116.    Officer Solorio wrote in his report that he was unable to book Mr. Payne into the jail due to his condition.  He also wrote that Mr. Payne was treated for any injury or medical condition was in stable condition and he served him citations.

117.    Those citations were served not to man in stable condition but one who was unconscious and brain dead in the ICU.

118.    With the service of those citations, Mr. Payne was officially released from Officer Solorio's custody.

*LAW OFFICE OF WILLOW HILLMAN*
*44 BROADWAY, SUITE 222 – EUGENE, OR 97401*
*Phone: (541) 735-3678    Fax: (541) 485-7152*

119.    Landon Payne's wife rushed to the hospital and was given the news of her husband's condition.

120.    Landon Jay Payne was removed from life support and died in the Riverbend ICU on March 30, 2020.

121.    An autopsy was performed and the injury causing his death was described as decedent "became unresponsive during restraint by law enforcement."

122.    The cause of death pending a toxicology screening was determined to be anorexic encephalopathy.

123.    The second cause of death was determined to be cardiopulmonary arrest during restraint by law enforcement.

124.    The manner of death was undetermined.

## FIRST CLAIM FOR RELIEF

**Civil Rights Claim – 8th and/or 14th Amendments – 42 USC § 1983**
**(Against Defendants Jairo Solorio, Andrew Roberts, Jacob Thomas and Robert Griesel of The City of Eugene)**

125.    Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1 through 124, above.

126.    Defendants JAIRO SOLORIO, ANDREW ROBERTS, JACOB THOMAS and ROBERT GRIESEL were deliberately indifferent to Landon Payne's rights under the Eighth and/or Fourteenth Amendments of the U.S. Constitution in one or more of the following ways:

    a.    In failing to provide Landon Payne with prompt medical attention for his serious medical needs;

    b.    In failing to recognize the serious medical situation Landon Payne was in;

    c.    In failing to properly treat Landon Payne's serious

16    COMPLAINT

medical needs;

d. In failing to take Landon Payne to a hospital for diagnosis
   and treatment rather than the Lane County Jail for book
   in;

e. In failing to ensure a proper health screening occurred
   before transfer to the Lane County Jail;

f. In failing to transport to the local hospital for a proper
   medical clearance when an EMT team was unable to
   assess Landon Payne's vitals; and

g. In failing to ensure a proper medical evaluation occurred
   after a taser was used on Landon Payne.

127. As a direct result of the actions and inactions of defendants as set forth in paragraph 1-124, above, Landon Payne endured and suffered severe physical and emotional distress, his medical condition was either caused or exacerbated by the action of these defendants Landon Payne's family has been denied his love, society and companionship. Landon Payne's estate incurred expenses for medical services, burial services and memorial services. Landon Payne's estate and her family are entitled to compensatory damages in whatever amount the jury concludes is appropriate.

128. The actions of defendants JAIRO SOLORIO, ANDREW ROBERTS, JACOB THOMAS and ROBERT GRIESEL were recklessly indifferent to the civil rights of Christina Ryan, and callously disregarded Landon Payne's physical safety, and punitive damages should be awarded in whatever amount the jury concludes is appropriate.

129. Plaintiff is entitled to necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

17    COMPLAINT

## SECOND CLAIM FOR RELIEF

**Civil Rights Claim – 8th and/or 14th Amendments – 42 USC § 1983**
**(Against Defendants Justin Wilson, Kimberly Fulton, Emma Edwards, Colter Gawith, Nathan Gent, Michael Baeuerlen, Stephen Foley, Joseph Fisher, Jeremy Fifer, William McClure, Lance Jester, Clint Riley and Deputy C. Santini of Lane County Sherriff's Department)**

130.    Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1 through 124, above.

131.    Defendants Justin Wilson, Kimberly Fulton, Emma Edwards, Colter Gawith, Nathan Gent, Michael Baeuerlen, Stephen Foley, Joseph Fisher, Jeremy Fifer, William McClure, Lance Jester, Clint Riley and Deputy C. Santini were deliberately indifferent to Landon Payne's rights under the Eighth and/or Fourteenth Amendments of the U.S. Constitution in one or more of the following ways:

    a.  In failing to provide Landon Payne with prompt medical attention for his serious medical needs;

    b.  In failing to recognize the serious medical situation Landon Payne was in;

    c.  In failing to properly treat Landon Payne's serious medical needs;

    d.  In failing to refuse to intake Landon Jay Payne and demand Eugene Police transfer Landon Payne from the Lane County Jail to a hospital for diagnosis and treatment prior to entry into the Lane County Jail.

132.    As a direct result of the actions and inactions of defendants as set forth in paragraph 1-124, above, Landon Payne endured and suffered severe physical and emotional distress, his medical condition was either caused or exacerbated by the action of these defendants. Landon Payne's family has been denied his love, society and companionship. Landon Payne's estate incurred expenses for medical services, burial services and memorial services. Landon Payne's estate and her family are entitled to compensatory damages in

*LAW OFFICE OF WILLOW HILLMAN*
*44 BROADWAY, SUITE 222 – EUGENE< OR 97401*
*Phone: (541) 735-3678    Fax: (541) 485-7152*

whatever amount the jury concludes is appropriate.

133.    The actions of defendants Justin Wilson, Kimberly Fulton, Emma Edwards, Colter Gawith, Nathan Gent, Michael Baeuerlen, Stephen Foley, Joseph Fisher, Jeremy Fifer, William McClure, Lance Jester, Clint Riley and Deputy C. Santini were recklessly indifferent to the civil rights of Landon Payne, and callously disregarded Landon Payne's physical safety, and punitive damages should be awarded in whatever amount the jury concludes is appropriate.

134.    Plaintiff is entitled to necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

### THIRD CLAIM FOR RELIEF

### Civil Rights Claim – 4th, 8th and/or 14th Amendments – 42 USC § 1983

### *Monell* Claims Against City of Eugene

135.    Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1 through 124, above.

136.    Prior to March 20, 2020 defendant City of Eugene developed and maintained polices or customs exhibiting deliberate indifference to the constitutional rights of people to whom their employees would interact with and respond to, which caused the violation of Landon Payne's rights.

137.    It was the policy and/or custom of defendant city of Eugene to inadequately supervise and train its officers, including defendants, thereby failing to adequately hinder further constitutional violations on the part of its employees.  City of Eugene did not require adequate training or retraining for officers who have engaged in misconduct.

138.    As described above, one or more of the City of Eugene's policies, official well-established practices, or acts caused the violation of Landon Payne's right to be free from

19    COMPLAINT

excessive physical force and his resulting injures, as guaranteed by the Fourth Amendment to the United States Constitution, he's right to be free from excessive use of force.

139.    The moving forces that resulted in the deprivation of the Eighth and/or Fourteenth Amendment rights of Landon Payne were the following policies, customs or practices of the City of Eugene through the Eugene Police Department:

    a.    A policy, custom or practice of providing insufficient medical and mental health assessments;

    b.    A policy, custom or practice of denying people in medical and mental health crisis medically necessary transfers to hospitals;

    c.    A policy custom or practice of not following their own written policies regarding training in how to handle and deescalate mental health crisis situations;

    d.    A policy, custom or practice of failing to respond properly to the serious medical needs of arrestees and/or inmates;

    e.    A policy, custom or practice of failing to respond properly to inmates experiencing drug or alcohol overdose or withdrawal;

    f.    A policy, custom or practice of failing to meet widely accepted community standards of care with regard to medical services for jail inmates; and

    g.    A policy, custom or practice of failing to properly investigate use of force and deaths of arrestees and to properly respond to the results of those investigations.

140.    The policies of defendants City of Eugene posed a substantial risk of causing substantial harm to arrestees and individuals suffering mental health and serious medical emergencies, and the City of Eugene was aware of the risk.

20    COMPLAINT

141.    As a direct result of the policies, customs or practices of The City of Eugene, Landon Payne was unnecessarily arrested, not provided with timely medical care, excessive use of force was used against him.  As a direct result of the policies, customs or practices the City of Eugene, Landon Payne endured and suffered severe physical and emotional distress, and his medical condition was either caused by or exacerbated by the actions of the officers as a result of these polices, practices or customs.  Landon Payne's family has been denied his love, society and companionship. Landon Payne's estate incurred expenses for medical services, burial services and memorial services. Landon Payne's estate and his family are entitled to compensatory damages in whatever amount the jury concludes is appropriate.

142.    The actions of defendant City of Eugene were recklessly indifferent to the civil rights of Landon Payne, and callously disregarded Landon Payne's physical safety and emotional state, and punitive damages should be awarded in whatever amount the jury concludes is appropriate.

143.    Plaintiff is entitled to necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

## FOURTH CLAIM FOR RELIEF

### Civil Rights Claim – 4th, 8th and/or 14th Amendments – 42 USC § 1983

### *Monell* Claims Against Lane County

144.    Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1 through 124, above.

145.    Prior to March 20, 2020 defendant Lane County developed and maintained polices or customs exhibiting deliberate indifference to the constitutional rights of people to whom their employees would interact with and respond to, which caused the violation of Landon Payne's rights.

*LAW OFFICE OF WILLOW HILLMAN*
*44 BROADWAY, SUITE 222 – EUGENE, OR 97401*
*Phone: (541) 735-3678    Fax: (541) 485-7152*

146.   It was the policy and/or custom of defendant Lane County to inadequately supervise and train its corrections officers, including defendants, thereby failing to adequately hinder further constitutional violations on the part of its employees.  Lane County did not require adequate training or retraining for officers who have engaged in misconduct.

147.   As described above, one or more of Lane County's policies, official well-established practices, or acts caused the violation of Landon Payne's right to be free from excessive physical force and his resulting injures, and death, as guaranteed by the Fourth Amendment to the United States Constitution, he's right to be free from excessive use of force.

148.   The moving forces that resulted in the deprivation of the Eighth and/or Fourteenth Amendment rights of Landon Payne were the following policies, customs or practices of the Lane County:

> a.   A policy, custom or practice of providing insufficient medical and mental health assessments;
>
> b.   A policy, custom or practice of denying people in medical and mental health crisis medically necessary transfers to hospitals;
>
> c.   A policy, custom or practice of failing to respond properly to the serious medical needs of arrestees and/or inmates;
>
> d.   A policy, custom or practice of failing to respond properly to inmates experiencing drug or alcohol overdose or withdrawal;
>
> e.   A policy, custom or practice of kneeling on restrained inmates and/or arrestees;
>
> f.   A policy, custom or practice of not refusing to book in arrestees in severe mental crisis or medical crisis without a proper medical evaluation first;

22    COMPLAINT

g.    A policy, custom or practice of failing to meet widely accepted community standards of care with regard to medical services for jail inmates and or arrestees; and

h.    A policy, custom or practice of failing to properly investigate use of force and deaths of arrestees and to properly respond to the results of those investigations.

149.    The policies of defendant Lane County posed a substantial risk of causing substantial harm to arrestees and individuals suffering mental health and serious medical emergencies, and Lane County was aware of the risk.

150.    As a direct result of the policies, customs or practices of Lane County, Landon Payne was unnecessarily arrested, not provided with timely medical care and an excessive use of force was used against him.  As a direct result of the policies, customs or practices the City of Eugene, Landon Payne endured and suffered severe physical and emotional distress, and his medical condition was either caused by or exacerbated by the actions of the officers as a result of these polices, practices or customs.  Landon Payne's family has been denied his love, society and companionship. Landon Payne's estate incurred expenses for medical services, burial services and memorial services. Landon Payne's estate and his family are entitled to compensatory damages in whatever amount the jury concludes is appropriate.

151.    The actions of defendant Lane County were recklessly indifferent to the civil rights of Landon Payne, and callously disregarded Landon Payne's physical safety and emotional state, and punitive damages should be awarded in whatever amount the jury concludes is appropriate.

152.    Plaintiff is entitled to necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

23    COMPLAINT

**FIFTH CLAIM FOR RELIEF**
**(42 USC §1983 – Fourth Amendment Violation – Excessive Force - Against Defendants Jairo Solorio, Andrew Roberts, Jacob Thomas and Robert Griesel of The City of Eugene)**

153.    Paragraphs 1 through 124 are incorporated herein by reference as though fully set forth.

154.    As described above, Defendants violated Landon Payne's right not be subjected to excessive physical force, as guaranteed by the Fourth Amendment to the United States Constitution, which caused Landon Payne injuries.

155.    As a result of the above, Plaintiff is entitled to economic and non-economic damages against defendants in amounts to be determined at trial.

156.    Plaintiff should be awarded her attorney fees and litigation expenses/costs against defendants pursuant to 42 USC §1988.

**SIXTH CLAIM FOR RELIEF**
**(42 USC §1983 – Fourth Amendment Violation – Excessive Force - Against Defendants Justin Wilson, Kimberly Fulton, Emma Edwards, Colter Gawith, Nathan Gent, Michael Baeuerlen, Stephen Foley, Joseph Fisher, Jeremy Fifer, William McClure, Lance Jester, Clint Riley and Deputy C. Santini of Lane County Sheriff's Department)**

157.    Paragraphs 1 through 124 are incorporated herein by reference as though fully set forth.

158.    As described above, Defendants violated Landon Payne's right not be subjected to excessive physical force, as guaranteed by the Fourth Amendment to the United States Constitution, which caused Landon Payne injuries.

159.    As a result of the above, Plaintiff is entitled to economic and non-economic damages against defendants in amounts to be determined at trial.

160.    Plaintiff should be awarded her attorney fees and litigation expenses/costs against defendants pursuant to 42 USC §1988.

**SEVENTH CLAIM FOR RELIEF**
**(State Law Claim – Battery - (Against Defendants Jairo Solorio, Andrew Roberts, Jacob Thomas and Robert Griesel of The City of Eugene)**

24    COMPLAINT

161.    Paragraphs 1 through 124 are incorporated herein by reference as though fully set forth.

162.    Defendants engaged in harmful or offensive contact with Landon Payne, and were acting in the course and scope of their employment when they did so.

163.    Defendant City of Eugene is responsible for the tortious conduct of their employees, which caused the injuries to Mr. Payne.

164.    As a result of this battery, Mr. Payne suffered damages as described above.

165.    As a result of the above, Mr. Payne's estate is entitled to economic and non-economic damages against defendants in amounts to be determined at trial.

166.    Plaintiff should be awarded her costs, including expert fees against defendants.

### EIGHTH CLAIM FOR RELIEF
**(State Law Claim – Battery - Against Defendants Justin Wilson, Kimberly Fulton, Emma Edwards, Colter Gawith, Nathan Gent, Michael Baeuerlen, Stephen Foley, Joseph Fisher, Jeremy Fifer, William McClure, Lance Jester, Clint Riley and Deputy C. Santini of Lane County Sherriff's Department)**

167.    Paragraphs 1 through 124 are incorporated herein by reference as though fully set forth.

168.    Defendants engaged in harmful or offensive contact with Landon Payne, and were acting in the course and scope of their employment when they did so.

169.    Defendant Lane County is responsible for the tortious conduct of their employees, which caused the injuries to Mr. Payne.

170.    As a result of this battery, Mr. Payne suffered damages as described above.

171.    As a result of the above, Mr. Payne's estate is entitled to economic and non-economic damages against defendants in amounts to be determined at trial.

172.    Plaintiff should be awarded her costs, including expert fees against defendants.

### NINTH CLAIM FOR RELIEF

*LAW OFFICE OF WILLOW HILLMAN*
*44 BROADWAY, SUITE 222 – EUGENE, OR 97401*
*Phone: (541) 735-3678    Fax: (541) 485-7152*

**(Negligence - Against All Defendants)**

173.    Paragraphs 1 through 37 are incorporated herein by reference as though fully set forth.

174.    Defendants' actions as alleged above violated the standard of care required of law enforcement, including dispatchers under the circumstances.

175.    Defendants' actions created an unreasonable and foreseeable risk of injury to Mr. Payne.

176.    As a result of the above, Plaintiff is entitled to an award of economic and non-economic damages against defendants, in amounts to be determined at trial.

177.    Plaintiff should be awarded her costs, including expert fees against defendants.

**<u>TENTH CLAIM FOR RELIEF</u>**
**(Intentional Infliction of Emotional Distress - Against All Defendants)**

178.    Paragraphs 1 through 37 are incorporated herein by reference as though fully set forth.

179.    Defendants intentionally and/or with reckless disregard inflicted severe emotional distress on Landon Jay Payne, as described above.

180.    As described above, Defendants' acts constituted an extraordinary transgression of the bounds of socially tolerable conduct.

181.    As a result of the above, Defendants caused Landon Payne severe emotional distress.

182.    As a result of the above, plaintiff is entitled to an award of economic and non-economic damages against defendants, in amounts to be determined at trial.

183.    Plaintiff should be awarded his costs, including expert fees against City of Eugene.

26    COMPLAINT

## ELEVENTH CLAIM FOR RELIEF

**Civil Rights Claim – 4th, 8th and/or 14th Amendments – 42 USC § 1983**

**Supervisory Liability**

184.    Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1 through 124, above.

185.    Defendants Griesel and Riley, in their supervisory capacities, were aware of the policies, customs or practices as alleged, above, and were aware that said policies, customs or practices created a substantial risk of  causing substantial harm to arrestees and inmates by endangering their physical safety and their medical and mental health needs.  Despite their knowledge, said supervisors allowed approved of and ratified said policies, customs, or practices.

186.    Defendants Griesel and Riley, in their supervisory capacities, failed to adequately train City of Eugene and Lane County employees.

187.    Defendants Griesel and Riley were aware that the failure to train set forth, above, created a substantial risk of causing harm to arrestees and/or inmates.

188.    As a direct result of the actions and inactions of Defendants Griesel and Riley, Landon Payne endured and suffered severe physical and emotional distress, his medical condition was caused and/or exacerbated by, and he died as a result. Landon Payne's family has been denied his love, society and companionship.  Landon Payne's estate incurred expenses for medical services, burial services and memorial services. Landon Payne's estate and his family are entitled to compensatory damages in whatever amount the jury concludes is appropriate.

189.    The actions of Defendants Griesel and Riley were recklessly indifferent to the civil rights of Landon Payne, and callously disregarded Landon Payne's physical safety, and punitive damages should be awarded in whatever amount the jury concludes is appropriate.

190.    Plaintiff is entitled to necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

27    COMPLAINT

**WHEREFORE,** plaintiff prays for relief from this court as follows:

1. Assume jurisdiction in this matter over plaintiff's claims;

2. Award plaintiff's economic and non-economic damages against defendants in amounts to be determined at trial in accordance with the allegations set forth above;

3. Award plaintiff his attorney fees and litigation expenses/costs against defendants in accordance with the allegations set forth above; and

4. Grant such other relief as may be just and proper.

DATED this 27th day of March 2022.

LAW OFFICE OF WILLOW HILLMAN, LLC

_____

Willow Hillman OSB #153514
Attorney for Plaintiff
willow@willowhillmanlaw.com

**PLAINTIFF DEMANDS A JURY TRIAL.**

LAW OFFICE OF WILLOW HILLMAN, LLC

_____

Willow Hillman OSB #153514
Attorney for Plaintiff
willow@willowhillmanlaw.com

*LAW OFFICE OF WILLOW HILLMAN*
*44 BROADWAY, SUITE 222 – EUGENE< OR 97401*
*Phone: (541) 735-3678   Fax: (541) 485-7152*